17-1009
Wang v. Whitaker

BIA
Loprest, IJ
A094 922 413

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand eighteen.

PRESENT:
> JON O. NEWMAN,
> DENNIS JACOBS,
> PETER W. HALL,
> *Circuit Judges.*

_____

HAI YING WANG,
> *Petitioner,*

v.

MATTHEW G. WHITAKER, ACTING
UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

17-1009
NAC

| | |
|---|---|
| **FOR PETITIONER:** | Jay Ho Lee, New York, NY. |
| **FOR RESPONDENT:** | Chad A. Readler, Acting Assistant Attorney General; Stephen J. Flynn, Assistant Director; Jeffrey R. Meyer, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC. |

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Hai Ying Wang, a native and citizen of the People's Republic of China, seeks review of a March 16, 2017, decision of the BIA affirming a December 7, 2015, decision of an Immigration Judge ("IJ") denying Wang's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Hai Ying Wang,* No. A094 922 413 (B.I.A. Mar. 16, 2017), *aff'g* No. A094 922 413 (Immig. Ct. N.Y. City Dec. 7, 2015).

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA and consider only the adverse credibility determination. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66 (2d Cir. 2008). The following facts and procedural history are relevant to our review of the agency's adverse credibility determination.

Wang entered the United States in 2006 and initially applied for asylum based on her fear of forced

2

sterilization under China's family planning policy. Wang testified before an IJ in Arizona in March 2010, and in August 2010, the IJ made an adverse credibility finding and denied relief. On appeal to the BIA, Wang added a new basis for asylum: she alleged a fear of persecution in China as a practitioner of Falun Gong. She alleged that she had begun practicing Falun Gong in New York in May 2010 -- after her final hearing before the IJ -- that she had been photographed engaging in a September 2010 protest of the Chinese government's treatment of Falun Gong practitioners, that her activities had been reported to the Chinese government, and that, by early October 2010, officials had visited her mother-in-law and delivered a warning and written notice that Wang would be severely punished if she did not cease her Falun Gong activities. The BIA affirmed the IJ's adverse credibility determination, but remanded for the IJ to consider the new Falun Gong claim in the first instance. On remand, venue was changed from Arizona to New York at Wang's request.

At a hearing before a new IJ in December 2014, Wang reiterated that she began practicing Falun Gong in May 2010, and asserted that she first attended a protest or rally in September 2010, which led to Chinese officials

threatening her family in China in October 2010. She explained that she began practicing because she was upset following her final hearing on her family planning claim and a friend suggested that Falun Gong would help her mental and physical health. Wang produced an October 7, 2010, village committee notice that her mother-in-law allegedly received, in which the committee stated it was aware of Wang's Falun Gong activities and instructed Wang to stop those activities and return to China for punishment. Wang's attorney purportedly sent a redacted copy of the notice to China, and the Fuzhou City Mawei District Lanqi Town Feng Wo Village Committee responded with a letter confirming "the format of the notice, the content, the issuing date, and the official seal of the notice," as well as the paper and the seal. The redaction apparently obscured Wang's name.

In December 2015, the IJ in New York issued a written decision concluding that Wang was not credible. The IJ specified the prior adverse credibility determination as a factor, and made additional findings. Wang's "conversion to the discipline of Falun Gong [was] suspiciously well-timed, coming as it [did] on the heels of the denial of her first asylum application"; she failed to explain at her hearing

4

how Chinese authorities discovered her Falun Gong activities in the United States; although she claimed to have begun practicing Falun Gong in May 2010 as a result of the denial of her family planning claim, that claim was denied in August 2010; she provided confusing testimony about her introduction to Falun Gong; she implausibly asserted that Chinese authorities learned of her practice after a single protest; and she was vague on cross examination. The IJ concluded that the letter from the village committee was insufficient to rehabilitate Wang's credibility, noting that it was not authenticated and the drafters were unavailable for cross examination. The BIA found no error in the IJ's adverse credibility determination.

In this Court, Wang raises only her Falun Gong claim and does not challenge the negative credibility determination on her family planning claim. However, she argues that the agency's credibility findings as to her Falun Gong claim are not supported by the record, that the agency should not have relied at all on the prior credibility determination, and that the village notice was sufficiently authenticated given the letter her counsel obtained from the village committee.

The governing REAL ID Act credibility standard provides that the agency must "[c]onsider[] the totality of the circumstances," and may base a credibility finding on an applicant's "demeanor, candor, or responsiveness," the plausibility of her account, inconsistencies in her or her witness's statements, "without regard to whether" they go "to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless . . .it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. We conclude that substantial evidence supports the adverse credibility determination.

Contrary to Wang's position, it was proper for the agency to consider the prior adverse credibility determination because the agency is required to consider the "totality of the circumstances." 8 U.S.C. § 1158(b)(1)(B)(iii). Moreover, the agency reasonably concluded that the adverse credibility finding on her family planning claim undermined her credibility as a whole. *See Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) ("[A] single false document or a single instance of false testimony may (if attributable to the petitioner)

6

infect the balance of the alien's uncorroborated or unauthenticated evidence.").

Moreover, as the IJ explicitly noted, the timing of Wang's Falun Gong claim was suspicious because she commenced her Falun Gong practice in the United States, and did so shortly after the hearing on the merits of her family planning claim. In the analogous context of asylum claims based on political activities undertaken solely in the United States, we have cautioned that such claims are easily manufactured and must be closely scrutinized. *See Y.C. v. Holder*, 741 F.3d 324, 338 (2d Cir. 2013).

The IJ's reliance on the suspicious chronology finds further support in the record. First, Wang testified that she began practicing Falun Gong after she lost her case, but gave the date as May 2010, which was before the first IJ denied her family planning claim. *See Xiu Xia Lin*, 534 F.3d at 167 (holding that "an IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible"). Second, the IJ found Wang's testimony confusing as to how her practice commenced: she testified that her "best friend saw [her]" and "encouraged [her] to practice

7

Falun Gong", while on cross-examination, Wang testified that she lost contact with the friend, who simply told her to look Falun Gong up on the computer. She was also inconsistent as to where the introduction happened, first stating that her friend told her about Falun Gong while they were in Arizona, but then testifying that she did not start practicing until they ran into one another on the street in New York. Because the government's counsel asked multiple questions in an attempt to clarify this issue, the IJ did not err in relying on the confusing nature of the testimony as a basis for the adverse credibility determination. *Cf. Ming Shi Xue v. Bd. of Immigration Appeals*, 439 F.3d 111, 122-23 (2d Cir. 2006) (explaining that IJ should elicit explanation or detail before relying on non-obvious inconsistencies or vague or spare testimony).

Nor, given the suspicious timing, did the agency err in questioning the plausibility of Wang's allegation that the Chinese authorities discovered her involvement with Falun Gong in New York after she had attended a single protest. *See Siewe*, 480 F.3d at 168-69 ("The speculation that inheres in inference is not 'bald' if the inference is made available to the factfinder by record facts, or even a

8

single fact, viewed in the light of common sense and ordinary experience."). Although Wang alleged that she saw people from her village in China at the protest, the agency did not err in relying on her failure to provide further details during her testimony, particularly given that she did not identify those individuals and that this point was central to her fear of persecution. *See Honghseng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008) (holding that where asylum claim relies solely on activities in the United States, "an alien must make some showing that authorities in h[er] country of nationality are either aware of h[er] activities or likely to become aware of h[er] activities.").

Finally, having questioned Wang's credibility, the agency reasonably concluded that her documentary evidence did not rehabilitate her credibility. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."). Wang submitted a notice from the Chinese government that her mother-in-law purportedly received when authorities came to

9

her home in October 2010. The IJ and the BIA both declined to credit the notice, concluding, without further explanation, that the notice and letter were not authenticated. Although further explanation would have been helpful, "we do not demand that the BIA expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008) (internal quotation marks omitted). We defer to the agency's conclusion that the notice was insufficient to rehabilitate Wang's credibility. *See Y.C.*, 741 F.3d at 332 ("We defer to the agency's determination of the weight afforded to an alien's documentary evidence."). Although Wang's counsel documented his mailing of the notice to the committee and his receipt of the letter from the village committee, the agency did not have to give dispositive weight to the committee's confirmatory response: because the notice was redacted, the committee's letter could not establish more than the authenticity of the form, not that such a form was sent to Wang's mother-in-law.

Given the adverse credibility ruling on the family planning claim, which Wang does not challenge, as well as the suspicious timing of her Falun Gong claim combined with

10

her vague, inconsistent, and confusing testimony about how she commenced that practice, substantial evidence supports the agency's conclusion that Wang's Falun Gong claim was not credible.  The adverse credibility determination is dispositive of asylum, withholding of removal, and CAT relief because all three claims are based on the same factual predicate.  *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED.  As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot.  Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

```
                              FOR THE COURT:
                              Catherine O'Hagan Wolfe
                              Clerk of Court
```

11